IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JORGE MARIO PAREDES CORDOVA,
    Petitioner,

v.                                CASE NO: <u>58-03-CR-987-06-(DAB)</u>

UNITED STATES OF AMERICA,
    Respondant.
_____/

EMERGENCY MOTION FOR JORGE MARIO PAREDES CORDOVA
FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE.

## 1. INTRODUCTION

In 2009, Scotland released the lockerbie bomber, Abdel Baset Ali Al-Megrahi, on compassionate grounds, sparking significant controversy over the use of compassionate release. After serving approximately eight(8) years in prison for the bombing of Panam flight 103, which killed 270 people, including 189 americans. The convicted terrorist was released based on his terminal diagnosis of prostate cancer. "Lockerbie convict returns to jubilant welcome". Ney York Times (Aug. 21, 2009). https://www.nytimes.com/2009/08/21 lockerbie.html.

The case of Al-Megrahi and Jorge Mario Paredes Cordova could not be more different-- different jurisdiction, different circumstances, however, the release of the lockerbie bomber, raises two fundamental questions at the heart of this request: (1) What are the limits of compassionate release? and (2) When is it appropriate to release a prisoner for "Extraordinary and compelling reasons"?

A term of imprisonment that constituted just and proportionate punishment at the time of sentencing may become disproportionately severe based on changed of circumstances,

such as terminal illness or a serious debilitating illness. Congress clearly contemplated this scenario when it enacted The First Step Act of 2018, Pub. L. 115-391, 132, Stat.5194, 5239 (Dec.21, 2018), in partial response to the Bureau of Prisons(BOP) minimal use of the compassionate release program.

When this court sentenced Jorge Mario Paredes Cordova ("Jorge Mario")it was clear that Jorge Mario's 31 year prison sentence was symbolic for two reasons; retribution and deterrence. Over the past twelve (12) plus years circumstances have changed. This court must now consider whether keeping Jorge Mario incarcerated, in light of his debilitating chronic medical conditions, such as Diabetes, High Blood Presure, Cholesterol, which make him at risk inmate, vulnerable to covid-19, is truly in furtherance of statutory sentencing goals and our society's value and understanding of compassion.

Although an investigation by Pallidin investigations and other entities of newly discovered evidence places Jorge Mario conviction in serious doubt. Jorge Mario does not wish to dispute or minimize the severity of the allegde crimes at this time, because he has expressed remorse for his crimes. Now, after over twelve(12) years of incarceration and with his age and debilitating chronic mediacal conditions, Jorge Mario humbly asks this court for modicum of compassion.

Jorge Mario presents "extraordinary and compelling reasons for compassionate release and the BOp recognizes that Jorge Mario meets the criteria for a reduction in sentence based on his serious debilitating chronis madical conditions. In light of the Covid-19 pandemic. The president signed on March 26, 2020,"The cares Act", section 12003 of The Cares Açt(Mar. 26, 2020) Determine the "extraordinary and compelling circumstances", where Jorge mario due to his illnesses he is vulnerable to covid-19.

However Jorge Mario disagrees with the BOP's negligence on the serious-ness of the matter, even after the director of the Federal Bureau of Prisons ("BOP") received the attorney general's April 3, 2020, memoran-dum to process all at risk inmates for covid-19. The Oakdale F.C.I. is one of the institutions with the most covid-19 cases(and rising), and deaths, and the BOp's negligent cause of action to review compass-ionate release request's, put Jorge Mario at serious risk of covid-19. A reduction in sentence would not minimize the severity of his offense. His circumstances fall within the sentencing commission's standards for a sentence reduction, and consideration of 18 U.S.C. 3553(a) fact-ors do not outweight the indisputable fact that Jorge mario is at risk of dying, or that he has already been punished significantly for the crimes.

## II. BACKGROUND FACTS.

On December 21, 2018, The President signed The First Step Act("F SA"), into law, removing a major obstacle from judicial review of sen-tences to determine whether "extraordinary and compelling reasons", exist to permit a sentence reduction that is "sufficient but not grea-ter than necessary", under 18 U.S.C. 3553(a), First Step Act of 2018, Pub. L. 115-391, 132 stat. 5194, 5239 (Dec.21, 2018). Under FSA, this court is afforded jurisdiction to make 3553(a) determinations of whet-her, Jorge Mario's over twelve(12) years in prison is "sufficient, but not greater than necessary", to accomplish the goals of sentencing, section 404 of the First Step Act, which became effective on December 21, 2018, make Jorge Mario eligible for relief, because he was convic-ted for an offense involving cocaine, and was sentenced before June 21, 2012, when the Suprem Court decided, Dorsey v. United States, 567 U.S. 260(2012); and he continue to serve a sentence that is not fully in accordance with the Fair Sentencing Act.

See (The Eight Circuit Review de Novo), Unites States v. Gamble, 683
F. 3d 932,933(8th Cir. 2012)(Reviewing "De Novo" the applicability of
the [Fair Sentencing Act] to a defendant's case'), ( Quoting: United
States v. McDonald, no. 19-1221(8th Cir. 2019). Jorge Mario was convi-
cted on count one(1) and two(2) for conspiracy to possess and distrib-
ute 150 kilograms of cocaine, which at the time correspond to a stautory
penalty range of 10 years to life imprisonment, 21 USCS 841(a)(1)
(2012), and 21 USCS 960(b)(1)(1988). After the First Step Act made the
Fair Sentencing Act retroactive. Tha statutory range for Jorge Mario
(with a criminal history point of 1) is 4 to 40 years, 21 USCS 841(b)
(1)(A), count 2 for which Jorge mario was sentenced was a "coverted of-
fense". Under section 404 of the First Step Act, because (1) it is a
violation of a federal statue;(2) Tha statutory penalties for which
were modified by section 2 or 3  of the Fair Sentencing Act; and (3)
it was committed before August 3, 2010, and as such, Jorge Mario is
eligible for a reduction on count 2, based on the plain language of
the Act.

## A. HISTORY OF COMPASSIONATE RELEASE.

Congress enacted the current compassionate release statue, 18 U.
S.C. 3582, as part of The Comprehensive Crime Control Act('CCCA") of
1984. Section 3582(C) states : "That a district court can modify a fi-
nal terem of imprisonment after consideration of the 3553(a) factors
if "Extraordinary and Compelling" reasons warrant such a reduction,
" 18 USC 3582(C)(1)(A)(i). In 1984, congress conditioned the reduction
of sentence on the BOP director moving for the reduction; absent a BOP
motion, sentencing courts had no authority to modify a prisoner's se-
ntence for "Extraordinary and Compelling reasons", Id. Congress never
defined what constitutes an "Extraordinary and Compelling reasons",
for resentencing under 3582(c),

but the legislative history indicate that congress expected courts to grant relief peruant to the statue in appropriate cases.

One of congress's initial goals in passing the "CCCA" was to abolish federal parol and create a completely restructured guidelines sentencing system, S.Rep.No.98-225, AT 52,53 n.196(1983). Yet recognizing that parole historically plaed a key role in responding to changed circumstances. The senate committee stressed how some insividual cases may still warrant a second look at resentencing, including " cases of severe ilness. Cases in which compelling other extraordinary and compelling circumstances justify a reduction of an unusually long sentence". Id at 55. Rather than having the parole commission review every federal sentence, focused only on a offender's rehabilitation, congress decided that 3582(C) could and would enable courts to decide, in individual cases, if " there id judtification for reducing a term of imprisonment". Id. AT 56.

Congress intended for the situation's listed in 3582(C) to act as a "safety valve for modification of sentences" to enable sentence reduction's whn justified by various factors that previously could have been adressed through  the (now abolished) parole system. Id AT 121. This safety valve would "assure the availability of specific review and reduction to the term of imprisonment for " extraordinary and compelling reasons ' and [would allow courts] to respond to change in the guidelines ". Id. (alterations added). Notng that this approach would keep " The sentencing power in the judiciary where it belongs", rather than with the U.S. ParoleCommission. The statue permitted "later review of sentences in particularly compelling situations". Id.

-5-

B. THE U.S. SENTENCING COMMISSION CONCLUDED THAT 3582(C)(1)(A)'S
" EXTRAORDINARY AND COMPELLING REASONS " INCLUDES , BUT IS NOT
LIMITED TO, TERMINALLY ILL, DEBILITATING, ELDERLY OR FAMILY
CIRCUMSTANCES.

Congress innitially delegated the responsobilitiy for determining
what constitutes "extraordinary and compelling reasons" to the U.S. se-
ntencing commission, 28 U.S.C.S. 994(t)("The commision... shall descr-
ibe what should be considered extraordinary and compelling reasons for
sentence reduction, including the criteria to be applied and a list of
specific examples"). Congress provided only one limitation to what de-
legation of authority:"[R]ehabilitation of the defendant alone shall
not be considered an "extraordinary and compelling reason", 28 U.S.C.
994(t).

The commission initially neglected it's duty, leaving the BOP to
fill the void and develope it's own standards for extraordinary and co-
mpelling reasons warranting resentencing under 3582(C)(1)(A), modific-
ation-- even for prisoners who met the objective criteria--The commis-
sion amended it's policy staement, admonishing the BOP to file motions
for compassionate release, whenever a prisoner was found to meet the
criteria in U.S.S.G. 1B1.13.U.S. DOJ office of the onspector general,
'The federal bureau of prisons' compassionate release program(APR. 20
13); U.S.S.G. 1B1.13, App. note 4; See: United States v.  Dimasi,220 F.
Supp. 3d 173,175(Dimass. 2016)(Discussing the progression from the OIG
report to new encouraging guidelines).

C. CONGRESS CHANGED THE PROCESS FOR COMPASSIONATE RELEASE THROUGH THE
FIRST STEP ACT, BASED ON CRITICISM OF THE BOP'S INADEQUATE USE OF
IT'S AUTHORITY, RETURNING TO THE FEDERAL JUDICIARY THE AUTHORITY TO
REDUCE SENTENCES FOR "EXTRAORDINARY AND COMPELLING REASONS".

Only the BOP could move for a sentence reduction under 3582(C)(1)
(A), before congress enacted the FSA, See: P.L. 98-473(H.R. Res.648),
P.L. 98-473 STAT. 1837(Oct.12, 1984). Even if the federal prisoner qu-
alified under the sentencing commission's defenition of extraordinary

and compelling reasons. Absent the BOP motion, the sentencing court
had no authority to reduce the sentence. This led to several problems,
for example, the department of justice office of the inspector general
(OIG) found that the BOP failed to provide adequate guidence to staff
on the criteria for compassionate release requests, failed to set time-
lines for reviewing compassionate release requests, failed to create
formal procedures for informing prisoners about compassionate release
and failed to generate a system for tracking request's, See: 'The fed-
eral Bureau of Prisons compassionate release program, April 2013. OIG
#1- 2013 -006 At i, iV, [The OIg is accessible At: https://OIG.justice.
gov./reports/2013/e1306.pdf].

(On March 26, 2020, congress signed the "Cares Act" of 2020, bas-
ed on the pandemic of the covid -19. section 12003 re-enforced extra-
ordinary and compelling circumstances, for inmates with debilitating
and chronic illnesses,, who are vulnerable to covid-19. The attorney
general's April 3rd, 2020, memorandum to the BOP, to assess and eva-
luate all at risk inmates. Again cought the BOP negligent and unprepa-
red to magage the compassionate release requests, under this much more
grave circumstances that does warrant extraordinary and compelling re-
asons).

The OIG concluded long ago that FBOP, does not properly manage
the compassionate release program, resulting in inmates(Such as Jorge
Mario), who may be eligible candidates for release not being consider-
ed. Id; See: Generally, Stephen R. Sady and Lynn Defebach, second look
resentencing under 18 U.S.C.S. 3582(C), as example of bureau of prisons
policies in over incarceration, 21 Fed.Sent.RPTR.167(Feb. 2009), and
See: Dept. of Justice, office of the inspector general. The Impact of
an aging inmate population on the federal bureau of prisons, evaluati-
on and inspections divisions report 15-05 at iii,41-50(Rev.Feb. 2016).

A bipartisan group of senators expressed concern with BOP's continuing overly-restrictive application of compassionate release in 2017. See: Letter to Dr. Thomas R.kane, et al, August 3, 2017[attachment 1], and just prior to the passage of The First Act. Ther were reports that BOP had not acted in a manner consistant with congressional or sentencing commission's intent to encourage broader application of compassionate release, See: Chritie Thompson, ' frail old and dying, but their only way out of prison was in a coffin, N.Y. Times(March 7, 2018);https://www.nytimes.com/2018/03/07/US/Prisons-compassionate-releasehtml.

Congress heard those complaints on December 21, 2018. Congress passed the FSA, which transformed the process for compassionate rlease under 3582(C)(1)(A). Congress labeled these changes, " Increasing the use and transparency of the compassionate release", 164 Cong.Rec.H103-46, H10358(2018)(Emphasis added).

Persuant to the FSA, this court has discretion to reduce the term of imprisonment imposed in this case based on 3582(C)(1)(A)(i),(B) and (D), if it concludes that:(1) "extraordinary and compelling reasons warrant" a reduction in sentence;(2) consideration of the "factors set forth in section 3553(a)"; (3) Such a reduction is consistent with applicable policy statement issued by the sentencing commission", 18 U.S.C.S. 3582(C)(1)(A)(i), and section 404 of the First Step Act.

Accordingly, for the reasons argued herein, the court should grant Jorge Mario Paredes Cordova, a reduction in sentence, and order the BOP to gran compassionate release.

Respectfully Submitted this _4_ day of _Ɔʒ_____, 2020

_____

Jorge Mario Paredes Cordova

-8-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was mailed to the clerk of the court for the United States District Court for the Southern District of New York, to be served on any intrested parties, wiht enough pre-postage stamps for its delivery through the US postal mail service, on this  4  day of    JJ    , 2020.

_____

Jorge Mario Paredes Cordova
Reg.No. 80476-004 VP-A
Federal Correctional Institution II
P.O. Box 5010
Oakdale, LA 71463

June 2, 2020

On May 14, 2020 Jorge Mario Paredes Cordova filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He requested that his sentence of 372 months' imprisonment be reduced to time served. He seeks relief due to his medical conditions, which are said to be debilitating, and because the COVID-19 pandemic presents "extraordinary and compelling reasons" for his release. The motion is denied as premature. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that a court may grant a motion for a reduction after the defendant has "fully exhausted all administrative rights to appeal a failure" of the BOP to bring such a motion on his behalf, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."). As there is no record of his filing such a request with the BOP, the motion is denied as premature and without prejudice to its renewal.

SO ORDERED



CERTIFIED MAIL

7018 0360 0000 8712 4892

USM3
SDNY

Jorge Mario Paredes Cordova
Reg.No. 80476-004 VP-A
Federal Correctional Institution II
P.O. Box 5010
Oakdale, LA 71463

United States District Court for
the Southern District of New York
500 Pearl Street
New York, NY 10007