UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA                                  :

                                                                                 :     S8 03 Cr. 987 (PAC)

  - against -                                                          :

                                                                                 :     **<u>ORDER & OPINION</u>**

JORGE MARIO PAREDES-CORDOVA,                     :

      a/k/a "Pablo,"                                                :

            Defendant.                                               :
------------------------------------------------------------------------X

       Jorge Mario Paredes-Cordova ("Paredes") is incarcerated at Correctional Institute Big Spring (Flightline) ("Flightline"), "a contracted correctional institution in Texas." Mem. Opp'n 12, ECF No. 357.[1] Paredes now renews his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Mot. Misc. Relief 1, Dec. 7, 2020, ECF No. 354 ("Renewed Mot.")), requesting a sentence reduction to time served. Renewed Mot. 22. Paredes argues that his health conditions, the presence of COVID-19 in his facility, and his family circumstances constitute extraordinary and compelling reasons warranting compassionate release, and that the time he has already served is sufficient to satisfy the sentencing goals of 18 U.S.C. § 3553(a). The Government opposes Paredes' motion, arguing that he has not established extraordinary and compelling reasons and that the § 3553(a) factors weigh heavily against granting Paredes

---

[1] Both the Government and Paredes' counsel refer to Paredes' place of incarceration as "CI Big Spring." Mem. Opp'n 17; Reply to Resp. 4, ECF No. 359 ("Reply"). But Paredes is actually incarcerated at CI Big Spring (Flightline). Bureau of Prisons ("BOP"), *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Jan. 28, 2021) (in "first name" field, type "Jorge"; in "last name" field, type "Paredes-Cordova"). CI Big Spring has 103 inmates positive for COVID-19, while Flightline has zero. BOP, *Private Facilities*, https://www.bop.gov/coronavirus/ (last visited Feb. 3, 2021) (click "Full breakdown and additional details," then click "privately-managed prisons").

1

compassionate release.  Mem. Opp'n 3.  For the reasons below, the Court denies Paredes' renewed motion for compassionate release.

## BACKGROUND

On November 6, 2009, a jury found Paredes guilty of conspiring "to import into the U.S. and distribute more than [five] kilograms of cocaine, knowing that it would be unlawfully imported into waters within a distance of 12 miles of the coast of the U.S., in violation of 21 U.S.C. [§§] 812, 952(a), 959(a), 960(a)(1) . . . 960(b)(1)(B)[,] [and 963]," ("Count One") and conspiring "to distribute and possess with intent to distribute more than [five] kilograms of cocaine, in violation of 21 U.S.C. [§§] 812, 842(a)(1) . . . 841(b)(1)(A)[,] [and 846]." ("Count Two") Presentence Investigation Report ¶¶ 2–4 ("PSR"); PSR 1.  At the time, these offenses exposed Paredes to a United States Sentencing Guidelines ("Guidelines") range of imprisonment from 360 months to life.  PSR ¶ 131.

On April 16, 2010, Paredes was sentenced to 372 months' imprisonment to run concurrently on Counts One and Two, followed by five years' supervised release.  Judgment 2, 3, ECF No. 293.  In 2014, the United States Sentencing Commission lowered the Guidelines range applicable to Counts One and Two and made that amendment retroactive.  Mot. Reduce Sentence 3, ECF No. 347.  In 2016, Paredes moved for a sentence reduction based on the amended Guidelines range, as permitted under 18 U.S.C. § 3582(c)(2).  *Id.*  On February 17, 2016, Judge Deborah Batts granted Paredes' motion and reduced his sentence of imprisonment from 372 months to 292 months, the low end of the amended range.  Order Reducing Sentence 1, ECF No. 346; Mot. Reduce Sentence 3.  Upon Judge Batts' untimely passing, the case was reassigned to the undersigned.

Paredes first moved for compassionate release, *pro se*, on May 14, 2020.  Mot. Misc.

Relief 8, May 14, 2020, ECF No. 348.  This Court denied his motion as premature on June 2, 2020, because Paredes failed to first request release from his warden, as § 3582(c)(1)(A) requires.  Order, ECF No. 352.  On December 7, 2020, Paredes' counsel filed a renewed motion for compassionate release on his behalf.  Renewed Mot. 1.  The Government filed its opposition memorandum on December 23, 2020 (Mem. Opp'n), to which Paredes replied on December 30, 2020.  Reply 1.

## DISCUSSION

### I.   Applicable Law

Once a prison sentence has been imposed, courts generally must leave it undisturbed.  *See United States v. Marriott*, No. 1:18-cr-00339-PAC-12, 2020 WL 4883805, at *1 (S.D.N.Y. Aug. 19, 2020).  "The compassionate release statute at 18 U.S.C. § 3582(c)(1)(A)(i), [however,] provides a limited exception" to this general rule.  *Id.*  As amended by the First Step Act of 2018, the statute permits an inmate to bring a motion for compassionate release in federal court on his own behalf after "fully exhaust[ing] all administrative rights to appeal a failure of the Board of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  § 3582(c)(1)(A).

Once a defendant satisfies that exhaustion requirement, the court may "reduce the [defendant's] term of imprisonment," after considering the applicable sentencing factors set forth in § 3553(a), if the court finds that "extraordinary and compelling reasons warrant such a reduction."  § 3582(c)(1)(A)–(c)(1)(A)(i); *United States v. Kataev*, No. 16 Cr. 763-05 (LGS), 2020 WL 1862685, at *2 (S.D.N.Y. Apr. 14, 2020).  Even if a defendant demonstrates extraordinary and compelling reasons, the court may exercise its discretion to deny the motion if

granting a sentence reduction would compromise the sentencing goals set forth in § 3553(a). *Marriott*, 2020 WL 4883805, at *2–*3.[2]  When evaluating motions for compassionate release,

> courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the [defendant's] prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public.

*United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. 2020) (collecting cases).  They have also considered the defendant's unique family circumstances.  *See, e.g.*, *Kataev*, 2020 WL 1862685, at *3 (considering defendant's need to care for his disabled 10-year-old daughter (where disabled wife was unable to care for the child), *inter alia*, as constituting extraordinary and compelling reasons to reduce defendant's sentence).

---

[2] § 3582(c)(1)(A) also requires that any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  Prior to September 25, 2020, courts in this district held that U.S.S.G. § 1B1.13 was the applicable policy statement.  *See, e.g.*, *Marriott*, 2020 WL 4883805, at *2–*3 (applying U.S.S.G. § 1B1.13 and denying compassionate release); *Kataev*, 2020 WL 1862685, at *2–*3 (applying U.S.S.G. § 1B1.13 and granting compassionate release).  *United States v. Brooker*, however, held that "U.S.S.G. § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants," as opposed to those brought by the Director of the BOP.  976 F.3d 228, 236 (2d Cir. 2020).  The result is that district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  *Id.* at 237.  The only statutory constraint is that a court shall not consider rehabilitation alone an extraordinary and compelling reason.  *Id.* at 237–38.

## II. Application

### a. Exhaustion

Paredes has satisfied the exhaustion requirement. Paredes requested compassionate release from the warden of FCI Oakdale II on September 15, 2020, when he was incarcerated there. Renewed Mot. Ex. 1, ECF No. 354–1. The warden never responded to that request, and more than 30 days have lapsed.[3] Accordingly, Paredes has satisfied the compassionate release statute's exhaustion requirement. § 3582(c)(1)(A).

### b. Extraordinary and Compelling Reasons

Paredes argues that, at 54 years old, his obesity, Type II diabetes, hypertension, and high cholesterol combine to position his health so precariously that COVID-19 presents a mortal danger to him, should he contract it. Renewed Mot. 13. According to the Centers for Disease Control ("CDC"), individuals who have Type II diabetes or obesity (defined as a Body Mass Index ("BMI") between 30 and 40 kg/m$^2$) are at increased risk of experiencing severe illness from COVID-19. CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (updated Dec. 29, 2020). Individuals with hypertension might be at

---

[3] Sometime after Paredes renewed his motion for compassionate release in this Court, the BOP transferred him to Flightline, where he is currently incarcerated. § 3582(c)(1)(A) does not require Paredes to also request release from his warden at Flightline to exhaust his administrative remedies. *See United States v. Hooker*, No. 18 Cr. 768 (RMB), 2020 WL 6504539, at *1–*2 (S.D.N.Y. Nov. 5, 2020) (finding that defendant had satisfied the exhaustion requirement by requesting compassionate release from the warden of his first facility, even though he was transferred to another facility after filing his motion for compassionate release with the court); *but see United States v. Gineyard*, No. 3:19-cr-144-VLB-16, 2021 WL 531969, at *3 (D. Conn. Feb. 12, 2021) (finding that defendant had not exhausted his administrative remedies where he had "not attached a denial of compassionate release from the warden of FCI Otisville where he is in custody, only the warden from the facility where he had been in custody," but reaching the merits "for the sake of judicial economy and to avoid future motions based on the facts asserted in this motion.").

5

increased risk. *Id.* Dr. Wollschlaeger, who reviewed Paredes' medical records, states that these conditions increase his risk of severe illness or death from COVID-19, and also advises that Paredes has suffered kidney damage. Dr. Wollschlaeger Aff. 1–2, Renewed Mot. Ex. 4, ECF No. 354–3. Paredes urges the Court not to underestimate the seriousness of his exposure to COVID-19 at Flightline, suggesting that the number of reported cases understates the true number of infections and citing the number of cases generally in all BOP facilities as evidence of the danger he faces in prison. Reply 4–5, 6.

The Government concedes that Paredes' Type II diabetes "places him [in] the category of people who 'are at high risk of severe illness' from a COVID-19 infection," which "could permit the Court to find extraordinary and compelling circumstances." Mem. Opp'n 15. Nonetheless, the Government urges the Court to find that Paredes has not established extraordinary and compelling reasons warranting a sentence reduction. The Government argues that the BOP is adequately managing Paredes' health conditions,[4] many of which are not on the CDC's list of conditions that increase an individual's risk of severe illness from COVID-19. Mem. Opp'n 15, 17. Moreover, says the Government, Paredes faces little risk of exposure to COVID-19, because he tested negative for COVID-19 twice in November 2020 before he was transferred from FCI Oakdale II and Flightline has few COVID-19 cases. Mem. Opp'n 17–18.

The extent to which COVID-19 threatens Paredes' health at Flightline is unclear. Paredes is indisputably in the CDC's high-risk category, but his medical and prescription records provide strong evidence that the BOP has appropriately managed Paredes' health needs—which

---

[4] Redacted portions of the Government's submission (Mem. Opp'n 16), along with the Government's Exhibit A, describe the medications the BOP prescribed Paredes as evidence that BOP is providing him with adequate health care. The Government filed this material under seal because it reveals sensitive medical information.

6

this Court has previously recognized weighs against finding that an inmate's health conditions are extraordinary and compelling reasons warranting a sentence reduction. *See Brady*, 2020 WL 2512100, at *3 ("While [the Defendant's] medical conditions are serious, release is not justified because those conditions are stable and the Defendant has managed them in prison, [and] he is located at a federal medical facility that is equipped to provide care both for his existing conditions and should he contract COVID-19 . . . .");[5] *cf. United States v. Franco*, No. 12 Cr. 932 (PAC), 2020 WL 4344834, at *2 (S.D.N.Y. June 24, 2020) (finding extraordinary and compelling reasons where defendant with multiple health conditions had diabetes that "was out of control" and had "experienced symptoms of severely unmanaged diabetes.") (citation omitted). Further, Dr. Wollschlaeger did not specify whether Paredes suffered his kidney damage before or after his incarceration began. Thus, the Court cannot tell whether that damage is evidence that Paredes' health conditions are currently unstable. And Dr. Wollschlaeger's opinion that the BOP cannot meet Paredes' health needs (Dr. Wollschlaeger Aff. 1) is now moot, given that the medical records he reviewed were from before the BOP transferred Paredes to Flightline. Flightline, as a private facility, may have different medical care offerings than those in BOP facilities. *See* BOP, *Private Facilities*, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2021) (click "Full breakdown and additional details," then click "privately-managed prisons") ("Unlike federal inmates housed in BOP facilities, the contractor is responsible for . . . medical care.").

Additionally, Paredes does seem to be at low risk of exposure to COVID-19 at Flightline.

---

[5] The Court later granted Brady's renewed motion for compassionate release when he provided strong evidence that his conditions were neither stable nor well-managed, that they had in fact deteriorated during his time in prison and were likely to deteriorate further, and that release would not undermine the § 3553(a) sentencing factors. *United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2021 WL 200512, at *1–2 (S.D.N.Y. Jan. 20, 2021).

The BOP has developed and implemented a multifaceted plan to combat COVID-19 and has extended the plan to its private contractors, including Flightline. *United States v. Stevens*, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); Mem. Opp'n 17–18. The plan "include[s] limitations on outside visitors, restrictions on contact among inmates, enhanced cleaning and disinfecting protocols, and COVID-19 monitoring, testing, and quarantine procedures." Mem. Opp'n 17. These measures have proven effective: on May 1, 2020, Flightline had zero confirmed cases (*Stevens*, 459 F. Supp. 3d at 486); on December 17, 2020 and January 28, 2021, Flightline had three confirmed cases;[6] and on February 3, 2021, Flightline was back down to zero confirmed cases.[7] The data Paredes cites regarding COVID-19 cases in all BOP facilities aggregated have limited relevance; what matters is the risk that incarceration at his current facility poses to Paredes in particular. *See Hooker*, 2020 WL 6504539, at *3 ("Now that [the defendant] has been transferred, his reliance on the conditions at MCC is moot."). In stark contrast with Flightline, Guatemala (where Paredes plans to go—and indeed, must go—if released[8]) currently has a very high number of COVID-19 cases, leading the CDC to advise all persons to avoid travel there. *See* CDC, *COVID-19 Traveler Information*,

https://wwwnc.cdc.gov/travel/destinations/traveler/none/guatemala (Feb. 2, 2021) (listing Guatemala as "Level 4: COVID-19 Very High").

But Paredes also raises another circumstance as extraordinary and compelling: his family needs. Paredes has two minor children, aged 16 and 17, who are currently living with his sister,

---

[6] *United States v. Stevens*, No. 04-CR-222S, 2020 WL 7416954, at *2 & n.2 (W.D.N.Y. Dec. 18, 2020); BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2021).

[7] BOP, *Private Facilities*, https://www.bop.gov/coronavirus/ (last visited Feb. 3, 2021) (click "Full breakdown and additional details," then click "privately-managed prisons" and scroll to "Big Spring (Flightline) CI").

[8] Renewed Mot. 22; Mem. Opp'n 18.

Clara, in Guatemala. Renewed Mot. 17. Clara also cares for Paredes' elderly mother, Porfiria, whose health is in poor condition. *Id.* Clara's health is seriously deteriorating, to the point where she says she can no longer care for the children or Porfiria. *Id.* Accordingly, both Clara and Porfiria ask the Court to release Paredes so that he can resume custody of his children, care for Porfiria, and provide economically for Clara, Porfiria, and his children. Clara Aff. 2, Renewed Mot. Ex. 6, ECF No. 354–5; Porfiria Aff. 2, Renewed Mot. Ex. 8, ECF No. 354–7. No other family member has the ability and desire to assume these familial responsibilities on Paredes' behalf. *See* Reply 7.

Paredes cites *Kataev*, 2020 WL 1862685, at *3, in support of his position that his need to care for his minor children is an extraordinary and compelling reason to grant him a sentence reduction. But the facts of *Kataev* differ in important respects from the facts here. In *Kataev*, the minor child was 10 years old, she was wheelchair-bound, and she required "assistance with everyday tasks"—which the defendant's disabled wife could not provide. *Kataev*, 2020 WL 1862685, at *3. Here, by contrast, Paredes' minor children are in their late adolescence, and Paredes does not argue that they have any disabilities that require physical assistance; their needs appear to be economic only. Nonetheless, the children do need provision and a guardian. And Paredes' need to care for his elderly, ailing mother can also constitute an extraordinary and compelling reason. *See United States v. Lisi*, 440 F. Supp. 3d 246, 251–53 (S.D.N.Y. 2020) (finding extraordinary and compelling reasons where no one else was available to help defendant's seriously unwell mother, but denying release based on the § 3553(a) factors).

On this record, the Court is not convinced that Paredes has presented extraordinary and compelling reasons warranting a sentence reduction. But even if he had, the Court would deny Paredes compassionate release, because the applicable sentencing factors of § 3553(a) "weigh

9

heavily against" it. *Id.* at 252.

### c. 18 U.S.C. § 3553(a) Factors

The nature and characteristics of Paredes' offense are extremely serious, and his sentence must adequately reflect that. § 3553(a)(1)–(a)(2)(A). Paredes was the head of an international criminal organization that used "sophisticated methods," including code language and pre-paid cellular phones, to import and distribute more than 50 metric tons of cocaine into the United States over a seven-year period while avoiding detection by law enforcement. PSR ¶¶ 2–3, 21–22, 24, 81; Mem. Opp'n 4. Paredes moved cocaine by air, land, and sea, using "covert Guatemalan aircraft and airstrips," (PSR ¶ 21) "go-fast boats" hidden within ordinary fishing vessels (*id.*; *see also* Mem. Opp'n 6), and concealed compartments within cars and tractor-trailers (PSR ¶ 22; Mem. Opp'n 7–8). He concealed cocaine in scrap metal and roofing material containers, and even in a construction crane. Mem. Opp'n 9, 10–11. Paredes' organization funneled millions of dollars in drug proceeds to the heads of narcotics trafficking organizations. Mem. Opp'n 4; PSR ¶ 81. When a money laundering associate stole millions of dollars from him, Paredes attempted to have the associate assassinated. Mem. Opp'n 4 (citing PSR ¶30). Paredes also enlisted a corrupt Mexican customs broker to help move his drug shipments, and criminals distributed Paredes' imported drugs in New York, New Jersey, Pennsylvania, Illinois, and other places. Mem. Opp'n 4 (citing PSR ¶¶ 20, 71). In short, Paredes' criminal activities spread corruption, addiction, and misery across multiple countries for years.

At Paredes' sentencing, after adopting the PSR's factual findings, Judge Batts found "that there is absolutely no reason to impose a downward non-guidelines sentence. Indeed, if anything, the . . . Section 3553(a) factors would suggest a sentence above the low end of the advisory guideline range." Sent'g Tr. 20:21–22, 22:12–16. Judge Batts then imposed a sentence

12 months above the low end of the applicable Guidelines range.  But after the Guidelines range applicable to Paredes decreased retroactively, Judge Batts granted Paredes a generous sentence reduction from 372 to 292 months, the low end of the amended Guidelines range.

Paredes has now served approximately 52% of his reduced sentence (roughly 60% including "gain-time").[9]  He is not a defendant "who ha[s] served a substantial majority of [his] sentence[]."  *United States v. Butler*, No. 19 Cr. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020).  Any further reduction would provide Paredes with an "undue windfall," *Brady*, 2020 WL 2512100, at *3, and would fail to reflect the seriousness of Paredes' offense and his role as the leader of an international criminal organization, promote respect for the law, and provide Paredes with a just punishment.  *See* § 3553(a)(2)(A); *United States v. Anchondo*, No. CR 89-00874 TJH, 2020 WL 6821326, at *1 (C.D. Cal. Jan. 31, 2020) (holding that, where defendant had served 30 years of a life sentence for crimes including possession with intent to distribute a controlled substance following police seizure of approximately 21.4 tons of cocaine, the court would not grant release even assuming extraordinary and compelling reasons were present due to the seriousness of defendant's offenses and the harm he caused society).

The Court notes Paredes' efforts to improve himself in prison, including earning his GED and taking courses that aim to help him become a financially stable, mature parent upon his eventual release.  Renewed Mot. 21.  But this is not extraordinary rehabilitation, and even if it were, rehabilitation alone cannot establish extraordinary and compelling reasons.  *Brooker*, 976 F.3d at 237–38; *United States v. Strong*, No. 11 Cr. 1032-31 (PAE), 2021 WL 75660, at *5 (S.D.N.Y. Jan. 7, 2021) ("The Court commends [the defendant] for productively using his time in prison.  But that circumstance, which is not unusual, does not support reducing his sentence by

---

[9] *See* Renewed Mot. 12–13.

nearly five years."). And the Court does not agree with Paredes that these efforts and the time he has served have satisfied the sentencing goals of § 3553(a). Renewed Mot. 22. Indeed, it is not clear that Paredes even accepts responsibility for his crimes. *See* Mem. Opp'n 13; Mot. Misc. Relief 2, May 14, 2020 ("Although . . . newly[-] discovered evidence places Jorge Mario['s] conviction in serious doubt[,] Jorge Mario does not wish to dispute or minimize the severity of the alleg[ed] crimes at this time, because he has expressed remorse for his crimes."). Accordingly, Paredes' release is not warranted at this time.

## CONCLUSION

Paredes failed to establish extraordinary and compelling reasons in favor of release, but even if he did, granting him compassionate release would seriously undermine the sentencing goals of § 3553(a). The remainder of his sentence is "sufficient, but not greater than necessary" to satisfy the purposes of § 3553(a)(2). § 3553(a). Accordingly, Paredes' renewed motion for compassionate release is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 354.

Dated: New York, New York
      February 26, 2021

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge